UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
GLAPHYRA JEAN-LOUIS,

                Plaintiff,                    05 CV 4718 (SHS)

   -against-                          **AMENDED COMPLAINT**
                                                       **JURY DEMAND**

NEW YORK CITY HEALTH AND
HOSPITAL CORPORATION,

                Defendant.
-------------------------------------------------------------x

## I. NATURE OF ACTION

1. This action involves discrimination in employment based on race, and retaliation for engaging in protected activity. Plaintiff Glaphyra Jean-Louis is a black person of Hatian national origin. She maintains in this action that defendant subjected her to disparate treatment on account of race and nationality and then retaliated against her for engaging in protected activity, in violation Title VII of the Civil Rights Act of 1964 and § 1981 of the Civil Rights Act of 1866. She asserts a pendent State claim for discrimination on account of race and nationality and retaliation in violation of New York State Executive Law § 296 *et. seq.*

## II.    JURISDICTION

2. Jurisdiction is conferred upon this court by 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (a). Plaintiff further invokes the pendent jurisdiction of the court to adjudicate claims arising under State Law.

## III.    THE PARTIES

3. Plaintiff is a black person of Hatian national origin.

4. Defendant New York City Heath and Hospitals Corporation ("HHC") is a public benefit corporation created by the New York State Legislature engaged in operating health care facilities providing medical services to the public.

## IV. STATEMENT OF CLAIMS

5. Glaphyra Jean Louis commenced employment with the HHC on or about October 4, 1999 in the position of Coordinating Manager, assigned to the Department of Quality Management at Harlem Hospital.

6. Ms. Jean-Louis was highly qualified for the position for which she was hired. She holds a medical degree from a foreign institution and has a Masters Degree in Public Health Services from Boston University School of Public Health.

7. At all times mentioned in this complaint she performed her duties in a satisfactory manner.

8. On or about March 6, 2000, Ms. Jean-Louis was promoted to the position of Associate Director of Quality Management.

9. While employed by HHC Ms. Jean-Louis observed that the Quality Management Department had a custom and policy of limiting the promotional opportunities of its Hatian and black managerial staff members and subjecting them to disparate treatment with regard to compensation.

10. Although HHC purports to have a policy of giving a managerial employee a starting salary greater that paid by his or her previous employer, Ms. Jean-Louis was given a starting salary less than her previous salary.

11. In 2001, Ms. Jean-Louis in her capacity as Associate Director recommended three Coordinating Managers for promotion whom had received positive performance appraisals. Two of them were of Asian origin and the other was an Hatian.

12. HHC promoted the two Coordination Managers of Asian origin but did not to promote the Hatian, notwithstanding his positive evaluations.

13. In or about April 2002, Ms. Jean-Louis's supervisor, the Senior Associate Director of Quality Management, resigned from Harlem Hospital, leaving the position vacant. Ms. Jean Louis was thereupon directed to perform the duties of a Senior Associate Director of Quality Management.

14. Ms. Jean-Louis performed satisfactorily the duties of the Senior Director for a number of months.

15. Notwithstanding Ms. Jean-Louis's satisfactory performance of the duties of a Senior Associate Director, in June 2002 HHC passed her over and appointed Emma Beveridge, who is Asian to the position of Senior Associate Director of Quality Management.

16. Ms. Jean-Louis had superior qualifications for the position of Senior Associate Director of Quality Management than that of Ms. Beveridge.

17. Ms. Jean-Louis and other Hatian employees became subject to disparate treatment, pervasive ridicule, contempt, and bullying on account of their race and national origin by Emma Beveridge.

18. Ms. Beveridge repeatedly yelled at Ms. Jean-Louis at staff meetings.

19. In November 2002, Ms. Beveridge told an employee that, "You Hatians will have to pay for your pride."

20. . On or about October 20, 2002, Ms. Beveridge told her co-workers that she "did not buy certain paintings because they "looked too Hatian,"

21. In November 2002, Ms. Jean-Louis complained to Senior Associate Executive Director Dr. Sara Shahim about Ms. Beveridge's discriminatory conduct.

22. In July 2003, Ms. Jean-Louis complained to HHC's Equal Employment Counselor Robert Abedi about Ms. Beveridge's discriminatory conduct.

23. On September 18, 2003, Ms. Beveridge directed that the lock to Ms. Jean-Louis's door be changed without notifying her, resulting in her being locked out of her office.

24. Rather than conducting an investigation of Ms. Beveridges conduct or otherwise addressing Ms. Jean-Louis's complaint, on October 20, 2003, HHC retaliated against her by involuntarily transferring her to Metropolitan Hospital.

25. Upon information and belief, HHC has a custom and policy of not investigating employee complaints regarding discrimination.

26. Upon information and belief, HHC has a custom and policy of allowing its managerial staff to retaliate against employees who complain of discrimination by involuntary transfers and termination.

27. At the beginning of her assignment to Metropolitan Hospital, Ms. Jean-Louis was not provided with a job description and a workable computer.

28. While at Metropolitan Hospital Ms. Jean-Louis was frequently yelled at and verbally abused by her supervisor James Acero, who is Caucasian.

29. In or about April 2004, Ms. Jean-Louis, the only black person in her unit, was removed from her office on the first floor of Metropolitan Hospital and assigned to

a file room on the thirteenth floor, which isolated her from the rest of the managerial staff.

30. After being moved to the 13th floor, Ms. Jean-Louis was no longer given any work assignments related to her job title and she was excluded her from the training and conferences available to the other managerial employees in her unit.

31. In or about May 2004, Ms. Jean-Louis filed a complaint of employment discrimination with the Equal Employment Office of HHC.

32. In or about June 2004, Ms. Jean-Louis filed a charge of employment discrimination with the Equal Employment Opportunity Commission, charging HHC with discriminating against her on account of her race and nationality and retaliation for engaging in protected activity.

33. In August 2004, in response to a job posting at HHC, Ms. Jean-Louis applied for Senior Associate Director of Regulatory Affairs and Senior Associate Director of Ambulatory Care. She was later informed, after being interviewed, that both positions were awarded to other candidates.

34. In or about November 2004, Ms. Jean-Louis applied for the position of Associate Executive Director of Ambulatory Care. HHC did not respond to her application.

35. By letter dated January 7, 2005 HHC notified Ms. Jean-Louis that it was terminating her employment.

36. Upon information Ms. Jean-Louis's involuntary transfer to Metropolitan Hospital and termination was in retaliation for her having complained about employment discrimination.

37. On or about April 15, 2005 the U.S. Department of Justice issued Ms. Jean-Louis a Notice of Right to Sue.

38. This action was brought within ninety days from the issuance of the aforementioned Notice of Right to Sue.

39  Ms. Jean-Louis has exhausted all administrative remedies prior to commencing this action.

.                     V.   FIRST CLAIM FOR RELIEF

40.  Plaintiff repeats the matters set forth in paragraphs 1 through and including 39.

41.  Defendant's behavior as described above constitutes  intentional discrimination based on  race and national origin in h violation of  Title VII.

42.  As a consequence of said intentional discriminatory conduct plaintiff suffered lost earnings and  emotional distress, resulting in damages  in the amount  $300,000.00.

VI.   SECOND CLAIM FOR RELIEF

43   Plaintiff repeats  the matters set forth in paragraphs 1 through 39.

44.  Defendant's behavior as set forth above constitutes unlawful retaliation in violation of Title VII. .

45. As a consequence of  defendant's retaliatory conduct plaintiff has suffered lost earnings and  extreme emotional distress, resulting in  damages  in the amount $300,000.00.

VII.  THIRD CLAIM FOR RELIEF

46.  Plaintiff repeats the  matters set forth in paragraphs 1 through 39.

6

47. Defendant's behavior as set forth above constitutes intentional discrimination on account of race in violation of 42 U.S.C. § 1981.

48. As a consequence and defendant's discriminatory conduct, plaintiff suffered lost earnings and extreme emotional distress, resulting in damages in the amount of $5,000,000.00.

49. As a consequence of defendant's intentional and wanton disregard for plaintiff's civil rights, plaintiff is further entitled to punitive damages in the amount of $10,000,000.00.

## VIII. FOURTH CLAIM FOR RELIEF

50. Plaintiff repeats the matters set forth in paragraphs 1 through 39.

51. Defendant's behavior as set forth above constitutes retaliation in violation of 42 U.S.C. § 1981 for plaintiff having engaged in protected activity.

52. As a consequence of defendant's retaliatory conduct, plaintiff suffered lost earnings and extreme emotional distress, resulting in damages in the amount $5,000,000.00.

53. As a consequence of defendant's wanton and reckless retaliatory conduct, plaintiff is further entitled to punitive damages in the amount of $10,000,000.00.

## VII.   FIFTH   CLAIM FOR RELIEF

54. Plaintiff repeats the matters set forth in paragraphs 1 through 39.

55. Defendant's behavior as set forth above constitutes illegal discrimination based upon race and nationality and retaliation in violation of New York State Executive Law § 296 *et. seq.*.

7

56. As a consequence of defendant's unlawful conduct plaintiff suffered lost earnings and extreme emotional distress, resulting in damages in the amount of $ 5,000,000.00.

WHEREFORE, plaintiff demands judgment against the defendant on her First Claim for relief in the amount of $300,000.00, directing reinstatement and rightful place relief, with reasonable attorney fees, judgment on her Second Claim for relief in the amount of $300,000.00, Third Claim for Relief in the amount of $5,000,000.00, plus punitive damages, judgment on the Fourth Claim for Relief in the amount of $5,000,000.00, plus punitive damages and the Fifth Claim for Relief in the amount of $5,000,000.00, plus cost and such other relief the court deems just and proper.

### VII. JURY DEMAND.

Plaintiff requests that this matter be tried before a jury.

Dated: Brooklyn, New York
       May 15, 2005

.

                                              _____
ROOSEVELT SEYMOUR
*Attorney for Plaintiff*
175 Remsen Street, Suite 602
Brooklyn, New York 11201
(718) 802-0055
Bar Code: RT0915